UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GERALD BLUETT,

    Plaintiff,

vs.                                            Case No. 3:08-cv-459-J-HTS[1]

MICHAEL ASTRUE,
Commissioner of Social
Security,

    Defendant.

## **OPINION AND ORDER**[2]

### **I. Status**

Gerald Ralph Bluett is appealing the Social Security Administration's denial of his claims for Disability Insurance Benefits and Supplemental Security Income. His alleged inability to work is related to a "[h]erniated lumbar disc in [his] lower back[.]" Transcript of Administrative Proceedings (Tr.) at 100 (emphasis omitted). Mr. Bluett was ultimately found not disabled by Administrative Law Judge (ALJ) Teresa J. Davenport on March 23, 2007. *Id.* at 19, 24-25. Claimant has exhausted the available

---

    [1]    The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Notice, Consent, and Order of Reference-Exercise of Jurisdiction by a United States Magistrate Judge (Doc. #10).

    [2]    Pursuant to § 205(a)(5) of the E-Government Act of 2002, this order is available electronically. It is not otherwise intended for publication or to serve as precedent.

administrative remedies and the case is properly before the Court.

On appeal, Plaintiff argues the ALJ "erred by failing to properly evaluate the medical opinion evidence of record[,]" as well as by not "properly address[ing his] testimony and assess[ing] his credibility[.]" Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. #14; Memorandum) at 1, 15, 24 (emphasis omitted).[3]

## II. Legal Standard

This Court reviews the Commissioner's final decision as to disability[4] pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Whereas no special deference is accorded the application of legal principles, findings of fact "are conclusive if supported by substantial evidence[.]" *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (internal quotation marks omitted); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir.

---

[3] In the future, Plaintiff's counsel must be sure to abide by Rule 3.01(a), Local Rules, United States District Court, Middle District of Florida, in regard to brief length. Noncompliant filings may be stricken without further notice.

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A). An ALJ must follow the five-step sequential inquiry described in 20 C.F.R. §§ 404.1520, 416.920, determining as appropriate whether the claimant 1) is currently employed; 2) has a severe impairment; 3) is disabled due to an impairment meeting or equaling one listed in the regulations; 4) can perform past work; and 5) retains the ability to perform any work in the national economy. *See also Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

1998)). Substantial evidence has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Falge*, 150 F.3d at 1322 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Ingram*, 496 F.3d at 1260. Despite the existence of support in the record, the ALJ's determination may not be insulated from remand where there is a "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted[.]" *Ingram*, 496 F.3d at 1260 (internal quotation marks omitted); *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

### III. Discussion

**A. Treating Physician**

Plaintiff takes issue with "[t]he ALJ's analysis (or lack thereof)" pertaining to the opinions of three physicians, Drs. Douglas C. Sutton, Michael S. Scharf, and Robert G. Savarese. Memorandum at 15. Each of these doctors provided treatment to Mr. Bluett. *See, e.g.,* Tr. at 136-53 (Sutton), 165 (Scharf), 169-73, 214-17 (Savarese); Memorandum in Support of the Commissioner's Decision (Doc. #17) at 5 (referring to Dr. Scharf as "Plaintiff's treating neurosurgeon"), 6 (mentioning "treatment records from Dr. Savarese"), 7 ("Dr. Sutton . . . performed Plaintiff's most recent laminectomy/diskectomy[.]").

Unless rejected for good cause, a treating physician's opinion "is entitled to substantial weight[.]" *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 850 (11th Cir. 2006) (per curiam) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)); *see also Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Further, the weight afforded a treating doctor's opinion must be specified along with "any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Phillips*, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate [his or her] reasons.").

"The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." *Edwards*, 937 F.2d at 583; *see also Ogranaja*, 186 F. App'x at 850; *Phillips*, 357 F.3d at 1240-41. ALJs, however, may not simply substitute their own judgment for that of a medical expert. *See Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (per curiam). It has sometimes even been stated that, "[w]here the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, . . . as a matter of law . . . he has accepted it as true." *MacGregor*, 786 F.2d at 1053.

Mr. Bluett notes that all three of the doctors at issue opined at some point that he was disabled or unable to work. *See*

Memorandum at 18-20, 22.  Of course, a conclusion as to whether an individual is disabled or has the ability to work is essentially legal rather than medical.  It "is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam) (Determinations about disability or ability to work "are legal conclusions[,]" not medical opinions.); *Zulinski v. Astrue*, 538 F. Supp. 2d 740, 751-52 (D. Del. 2008) (doctor's statement as to inability "to sustain full time, everyday work on a regular basis" disregardable as not medical opinion (internal quotation marks omitted)); *cf. Russell v. Astrue*, Civil No. 07-4202 (RHK/RLE), 2009 WL 169307, at *17 (D. Minn. Jan. 26, 2009) ("[T]he opinions of treating physicians, on questions reserved for the Commissioner—such as whether a claimant is disabled, or is unable to work—are not to be given any weight by the ALJ.").  As "a physician is not qualified to make" judgments as to disability or ability to work as defined by law, *Norfleet v. Sullivan*, CIV. A. No. 89-5978, 1990 WL 29675, at *4 (E.D. Pa. Mar. 14, 1990); *see also Townsend v. Apfel*, 47 F. Supp. 2d 958, 964 (N.D. Ill. 1999), an ALJ would be unjustified in according special significance thereto.

Although SSR 96-5p indicates that where "the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record[,]" an ALJ is already required to consider the evidence of record in deciding whether a claimant qualifies as disabled. In practical terms, then, an opinion as to disability offered by a doctor takes on independent importance primarily when the circumstances trigger a duty to further develop the record. *Cf. Cole v. Astrue*, No. 5:07-CV-247(CDL), 2008 WL 4003379, at *4 (M.D. Ga. Aug. 25, 2008) ("[A]lthough the decision of disability is an issue reserved to the Commissioner, the ALJ has a duty to re-contact a medical source if the basis of that medical source's opinion is not clear."); SSR 96-5p ("[I]f the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification[.]"). Claimant does not explicitly argue the judge was required to recontact his physicians. However, as will be discussed herein, he does call into doubt the interpretation of, or reliance placed upon, certain of their statements in light of the doctors' descriptions relating to disability or the ability to work. To the

extent the Court is persuaded the providers' opinions were unclear, the ALJ will be reminded of the potential need for recontacting them.

As part of her residual functional capacity (RFC) analysis, the ALJ wrote that "[i]n May 2004 Dr. Douglas Sutton, the claimant's surgeon, noted that the claimant had had some improvement of his back and leg pain and he noted that the claimant's symptoms had stabilized." Tr. at 23. The judge concluded her discussion of this physician's information by reporting, "[a]lthough the claimant did continue to have limited motion of his spine, he had good gross motor strength in the lower extremities, normal reflexes and negative tension signs." *Id.* (citation to record omitted).

Plaintiff correctly observes that "[n]owhere does the ALJ reference . . . the fact that on 4 different occasions Dr. Sutton offered the opinion that [he] was either unable to, incapable of or disabled from work." Memorandum at 18-19 (internal quotation marks omitted); *cf.* Tr. at 139-40, 145, 151. "Notably," it is urged, "the ALJ specifically relies upon the May 2004 note . . . but fails to even mention that in that same note Dr. Sutton stated that Mr. Bluett remains disabled from work." Memorandum at 19 (internal quotation marks and citation to record omitted); *cf.* Tr. at 139. Under the particular circumstances of this case, the judge should

have addressed these statements and resolved any tension with those to which she gave weight.  Further, if necessary, she should have sought clarification from the doctor.

Concerning the evidence from Dr. Scharf, the judge recited that in March 2005, the physician "recommend[ed] that the claimant could engage in sedentary work as outlined in the <u>Dictionary of Occupational Titles</u>."  Tr. at 23 (citation to record omitted); *cf. id.* at 163.  She asserted "Dr. Scharf's opinion is supported by clinical and laboratory findings and has been given significant weight in establishing the claimant's residual functional capacity[.]"  *Id.* at 23.  Yet on January 5, 2005, the doctor had opined Mr. Bluett was unable even to sit for a total of an hour during an eight-hour workday, and was completely restricted from engaging in many other basic activities as well.  *See id.* at 223; *see also id.* at 224 ("P[atien]t is unable to work—needs surgery[.]"), 164 (indicating Dr. Scharf completed the Physical Capacities Evaluation Form).  The treatment records from early 2005 do not reveal Claimant was seen by Dr. Scharf at any point between the rendering of these divergent opinions.  *See id.* at 163 (March letter stating doctor had "not seen [Plaintiff] since November

2004"), 164; *cf.* Memorandum at 21 ("Dr. Scharf did not examine or treat Mr. Bluett at any time between January and March[.]").

Rather than addressing this discrepancy, the ALJ appears to have either overlooked it or selected for reliance the statement most agreeable to her. It may be that the judge could have justifiably found Plaintiff not disabled based in part on the evidence from Dr. Scharf. Still, her failure to discuss such potentially significant information constitutes error.

"[T]he opinion provided by Dr. Savares[e] that the claimant is limited to sitting 2 hours at a time, 3 hours total per day," was afforded no weight by the judge. Tr. at 23; *cf. id.* at 227, 225 ("I completed Mr. Bluett's disability paperwork indicating he is unable to work."). She explained "Dr. Savares[e] is not an orthopedic surgeon nor did he perform the claimant's actual surgery in June 2003. More weight is given to the opinion provided by Dr. Scharf, as he is a surgeon and would be more familiar with the claimant's impairments and resultant limitations." *Id.* at 23.

Plaintiff accuses the judge of inconsistent reasoning. "Compare this rationale with the fact that the ALJ completely ignored the opinion evidence from Dr. Sutton, who performed the June 2003 surgery." Memorandum at 23. Additionally, it is argued "the ALJ provided absolutely no support for her statement that strictly being a surgeon allowed Dr. Scharf to be more familiar

- 9 -

with Mr. Bluett's impairments and resultant limitations." *Id.* (internal quotation marks and bracketing omitted). Plaintiff emphasizes "Dr. Savarese actually provided treatment to [him] for his impairments on multiple occasions[.]" *Id.; cf.* Tr. at 165-66, 169-73, 214-17.

There is at least some merit to these contentions. Beyond the allegedly uneven emphasis placed on the providers' status as surgeons, the proposition that surgeons are inherently more familiar with a patient's impairments and limitations than are other treating physicians is certainly open to question. Though "whether or not the physician is a specialist in the area upon which an opinion is rendered" is relevant when weighing a treating source's views, *Armstrong v. Astrue*, No. 07-1385-WEB, 2008 WL 3915047, at *3 (D. Kan. Aug. 21, 2008) (internal quotation marks omitted), no independent significance seems attributable to the specialty's classification as surgical or nonsurgical. In many cases, a surgeon might well have less contact with a patient, and less intimate knowledge of his/her functional limitations, than another of the individual's doctors. On remand, the ALJ is to refrain from attaching special importance to this aspect of the evidence in the absence of further explanation.

**B.    Credibility**

The regulations recognize "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone[.]"  20 C.F.R. §§ 404.1545(e), 416.945(e); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam).  The standard in the Eleventh Circuit for evaluating the Commissioner's treatment of pain testimony has been articulated as follows:

> The [Commissioner] must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); *see also Eckert v. Comm'r of Soc. Sec.*, 152 F. App'x 784, 790 (11th Cir. 2005) (per curiam); SSR 96-7p (outlining how subjective complaints are to be evaluated).  "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote*, 67 F.3d at 1561.

After providing a summary of Plaintiff's testimony, the ALJ found "that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and

limiting effects of these symptoms are not entirely credible." Tr. at 23 (emphasis omitted). The judge then discussed aspects of the medical evidence and Mr. Bluett's daily activities. *See id.* at 23-24.

As already addressed in part III.A. of this opinion, the case must be remanded for full consideration of the opinions from Drs. Sutton, Scharf, and Savarese. Additionally, Plaintiff contends the judge's analysis ignored "the results of the examination by Dr. [Mark A.] Spatola[,] the lumbar MRI of March 14, 2006 and . . . the treatment notes of Dr. [Frank R.] Collier[, Jr.], which evidenced regular treatment for his back and leg impairments to include narcotic pain medications and epidural injections[.]" Memorandum at 25 (citations to record omitted).

In a report dated April 20, 2006, Dr. Spatola detailed various examination findings and diagnosed "1) chronic low back pain[,] 2) failed back syndrome[,] 3) multilevel degenerative disk disease[, and] 4) lumbar stenosis." Tr. at 204 (capitalization omitted).[5] The MRI findings from testing performed March 14, 2006, indicate, inter alia, "broad based disc protrusion causing moderate spinal canal and mild bilateral neural foraminal compromise." *Id.* at 206. To the extent this evidence supports Plaintiff's allegations of disabling pain, the ALJ should review the documents on remand.

---

[5] It is noted the ALJ, without discussing the contents thereof, alluded to Dr. Spatola's report by citing Exhibit 8F. *See id.* at 21, 23.

Along with a judge's obligation to expressly articulate adequate reasons for discrediting pain testimony, *see*, *e.g.*, *Reeves v. Astrue*, 238 F. App'x 507, 514 (11th Cir. 2007) (per curiam); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), he/she must consider the factors mentioned in 20 C.F.R. §§ 404.1529, 416.929.  Failure to discuss a particular item might not be fatal, but his/her decision must reveal compliance with the consideration requirement.  *See*, *e.g.*, *Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1378-79 (N.D. Ga. 2006); *cf. Singleton v. Astrue*, No. 3:06-CV-0760 CAN, 2008 WL 425528, at *7 (N.D. Ind. Feb. 13, 2008).  The factors include 1) the claimant's daily activities; 2) "[t]he location, duration, frequency, and intensity of . . . pain or other symptoms;" 3) factors that aggravate and precipitate symptoms; 4) "[t]he type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;" 5) "[t]reatment, other than medication, . . . received for relief of . . . pain or other symptoms;" 6) "[a]ny measures . . . used to relieve . . . pain or other symptoms (e.g., lying flat on [one's] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and" 7) "[o]ther factors concerning . . . functional limitations and restrictions due to pain or other symptoms."  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Although acknowledging the need for review thereof, *see* Tr. at 22 ("I considered all symptoms in accordance with the requirements of 20 CFR 404.1529 and 416.929[.]"), the Decision does not adequately address these factors. The ALJ found "it quite significant that despite his back pain, the claimant continues to perform a wide range of activities." *Id.* at 24. Specifically, "he is able to roll the garbage cans out to the street and he is able to dust, vacuum, and mow the lawn. He also reported . . . he cooks small things, does light cleaning, and performs minor household maintenance chores that do not require heavy lifting or standing too long." *Id.* (citation to record omitted). The judge concluded that, "[b]ased on the claimant's description of his activities of daily living, he should have no problems performing his daily and other activities within" the limits of the RFC assessment. *Id.* In other words, the activities cited by the ALJ were thought to establish a capacity to work full-time, "lifting 20 pounds occasionally and 10 pounds frequently, sitting for six hours, and walking/standing for two hours" during each eight-hour workday. *Id.* at 24.

As Claimant points out, the judge's "rationale . . . fails to reveal . . . the actual testimony . . . was not so straightforward." Memorandum at 26. Indeed, rather than simply describing an ability to vacuum, Mr. Bluett testified "[v]acuum[ing] is tough. I can do a room, maybe a room and a half

and I'll have to lay down for a couple of minutes[.]" Tr. at 266. Similarly, with regard to lawn mowing, Plaintiff stated despite having "had a self-propelled mower[,] it got to the point where [he] couldn't push it. So [he] had to end up getting a tractor[.]" *Id.* at 267. Even with the tractor, if he cut "the front [yard he would usually] have to lay down for a little bit before [doing] the back, or sometimes . . . have to split it up over two days." *Id.* Besides the rationale's at times inaccurate characterizations, it is observed Plaintiff's limited daily activities do not appear inconsistent with his contention he is unable to work on a full-time basis. "The Eleventh Circuit has rejected the idea that 'participation in everyday activities with short duration, such as housework or fishing, disqualifies a claimant from disability . . . .'" *White v. Barnhart*, 340 F. Supp. 2d 1283, 1286 n.8 (N.D. Ala. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)) (also stating, at 1286, that daily activities such as taking care of personal hygiene, cooking, housework, and occasional driving did not show the plaintiff could work).

Additionally, measures aside from treatment used to relieve pain were not assessed by the judge. Plaintiff testified "[t]he only way [he] really [could] get any substantial relief [was] to lay flat." Tr. at 269; *cf.* Memorandum at 26.

Accordingly, the reasons set out by the ALJ for discounting Plaintiff's pain complaints were insufficient. On remand, if

and I'll have to lay down for a couple of minutes[.]" Tr. at 266. Similarly, with regard to lawn mowing, Plaintiff stated despite having "had a self-propelled mower[,] it got to the point where [he] couldn't push it. So [he] had to end up getting a tractor[.]" *Id.* at 267. Even with the tractor, if he cut "the front [yard he would usually] have to lay down for a little bit before [doing] the back, or sometimes . . . have to split it up over two days." *Id.* Besides the rationale's at times inaccurate characterizations, it is observed Plaintiff's limited daily activities do not appear inconsistent with his contention he is unable to work on a full-time basis. "The Eleventh Circuit has rejected the idea that 'participation in everyday activities with short duration, such as housework or fishing, disqualifies a claimant from disability . . . .'" *White v. Barnhart*, 340 F. Supp. 2d 1283, 1286 n.8 (N.D. Ala. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)) (also stating, at 1286, that daily activities such as taking care of personal hygiene, cooking, housework, and occasional driving did not show the plaintiff could work).

Additionally, measures aside from treatment used to relieve pain were not assessed by the judge. Plaintiff testified "[t]he only way [he] really [could] get any substantial relief [was] to lay flat." Tr. at 269; *cf.* Memorandum at 26.

Accordingly, the reasons set out by the ALJ for discounting Plaintiff's pain complaints were insufficient. On remand, if

and I'll have to lay down for a couple of minutes[.]" Tr. at 266. Similarly, with regard to lawn mowing, Plaintiff stated despite having "had a self-propelled mower[,] it got to the point where [he] couldn't push it. So [he] had to end up getting a tractor[.]" *Id.* at 267. Even with the tractor, if he cut "the front [yard he would usually] have to lay down for a little bit before [doing] the back, or sometimes . . . have to split it up over two days." *Id.* Besides the rationale's at times inaccurate characterizations, it is observed Plaintiff's limited daily activities do not appear inconsistent with his contention he is unable to work on a full-time basis. "The Eleventh Circuit has rejected the idea that 'participation in everyday activities with short duration, such as housework or fishing, disqualifies a claimant from disability . . . .'" *White v. Barnhart*, 340 F. Supp. 2d 1283, 1286 n.8 (N.D. Ala. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)) (also stating, at 1286, that daily activities such as taking care of personal hygiene, cooking, housework, and occasional driving did not show the plaintiff could work).

Additionally, measures aside from treatment used to relieve pain were not assessed by the judge. Plaintiff testified "[t]he only way [he] really [could] get any substantial relief [was] to lay flat." Tr. at 269; *cf.* Memorandum at 26.

Accordingly, the reasons set out by the ALJ for discounting Plaintiff's pain complaints were insufficient. On remand, if

Claimant's complaints of pain are again to be rejected, the reasons articulated for this determination must be supported by substantial evidence.

## IV. Conclusion

In accordance with the foregoing, the Clerk of the Court is directed to enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g), and as incorporated by 42 U.S.C. § 1383(c)(3), **REVERSING** the Commissioner's decision and remanding with instructions to 1) reconsider the opinions of Drs. Sutton, Scharf, and Savarese; 2) if necessary, seek clarification from the foregoing physicians; 3) in the absence of further explanation, refrain from attaching special importance to whether an opinion is from a surgeon or nonsurgeon; 4) review the evidence from Dr. Spatola; 5) if Plaintiff's subjective complaints are again rejected, articulate reasons for doing so that are supported by substantial evidence; and 6) conduct any other proceedings deemed proper. If benefits are ultimately awarded, Plaintiff's counsel shall have thirty (30) days from receiving notice of the amount of past-due benefits to seek the Court's approval of attorney's fees under the Social Security Act.

**DONE AND ORDERED** at Jacksonville, Florida, this 1st day of April, 2009.

/s/ Howard T. Snyder
HOWARD T. SNYDER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of record
    and pro se parties, if any